Argued January 9, affirmed January 22, 1929.

# FRANK B. HUBBARD *v.* BRADY–HAMILTON STEVEDORES, INC.

(273 Pac. 702.)

For appellant there was a brief and oral argument by *Mr. E. L. McDougal.*

For respondent there was a brief over the name of *Messrs. Davis & Harris,* with an oral argument by *Mr. Paul R. Harris.*

ROSSMAN, J.—The complaint, based upon charges of negligence, sought to recover from the defendant, plaintiff's employer, $50,000 general damages, and $1,225 special damages. The court's instructions to the jury, after stating the material principles of substantive law, instructed upon the charges of general damages, but made no mention of special damages, although there was evidence of the latter. At its conclusion counsel for the plaintiff called atten-

tion to this omission. Thereupon, the judge and counsel retired to chambers; upon their return the jury was instructed upon the subject of special damages. The first portion of their verdict reads: "We, the jury, duly empaneled to try the above entitled cause, find for the plaintiff and against the defendant and assess plaintiff's damages at $15,000, Fifteen Thousand and no/100 dollars"; to this was subscribed the signature of the foreman. Immediately underneath appear the signatures of nine jurors, one above the other, and to the left of them was drawn a large bracket, which included within itself all of the nine names; at its central point was written, "special $1225." What occurred when this verdict was returned into court is thus described in the transcript, the words being those of Mr. McDougal, counsel for the appellant, dictated by himself (the Mr. Harris and Mr. Davis who took part in the colloquy which followed were counsel for the plaintiff):

"At the time the verdict was delivered to the court at five o'clock on June 7th, 1927, the court interrogated the jurors and asked them whether the word and figures, 'Special, $1225.00' was intended by the jurors signing the verdict as a verdict for special damages, in addition to the $15,000 general damages, to which the jurors signing the word and figures 'Special $1225.00' replied in the affirmative. The jury was not polled.

"Mr. Harris: At this time I will ask counsel for the defendant if he desires the jury polled as to the verdict for general damages for $15,000.00.

"Mr. McDougal: Well, my position was that I was not in court when the jury returned their verdict on June 7th, 1927, at which time they could have been polled, although I was notified of the fact that the jury was returning their verdict; and my position is that at the present time I do not desire to

waive any rights to which my client may be entitled, either as of June 7th, 1927, or June 8th, 1927.

"Mr. Harris: At this time, then, it is understood that so far as this time is concerned, that you do not desire the jury polled as to the verdict for general damages in the sum of $15,000.00.

"Mr. McDougal: Well, I am not going to answer that.

"Mr. Harris: Let the record show that Mr. McDougal, attorney for the defendant refused to answer the question put to him by counsel for the plaintiff, although the jury is available; the jury is in the court room.

"Mr. McDougal: No; I think the thing to do is to file your motion for judgment on the verdict, and then we can contest that motion.

"Mr. Davis: We'll just bring up the judgment and get it signed."

The judgment reproduces in full the verdict and allowed the plaintiff the sum of $16,225; the defendant appealed.

The only assignment of error argued is: "That the court erred in entering a judgment upon the alleged verdict written by the jury, for the reason that the same is an illegal verdict." The appellant not only contends that the verdict is ambiguous, but also argues that it is altogether possible that the document constitutes no verdict. For instance, it argues that the words "Special, $1225," may have been a mere notation; that the special damages may have been included within the general damages; and that the three jurors, who were not a part of the nine, may have acquiesced in the award of the $15,000, upon the condition that no special damages would be allowed, and that hence if the $1,225 is awarded in addition to the $15,000, the signature of the foreman to the general verdict exceeds the au-

thority conferred upon him by three of his number. Constitution of Oregon, Article VII, Section 18, provides: "In civil cases three-fourths of the jury may render a verdict."

If we may avail ourselves of the explanation of the verdict made by the nine members of the jury, all ambiguities are removed, and it becomes clear that they intended that the plaintiff should have the total of $16,225. The rules of evidence offer no impediment to our consideration of the explanation, unless it be the parol evidence rule, which is peculiarly applicable to a verdict. By reason of this rule the verdict is generally the sole instrument which evidences the jury's findings upon the issues of fact submitted to it: Wigmore on Evidence (2 ed.), § 2348. But, it is to be observed, that before the judge received the verdict he noticed the irregularity in form, which the defendant calls to our attention. So as to assure himself of à correct interpretation of the jury's meaning, he asked questions and received information from the jury, which clearly indicated that both general damages, and also special damages, were to be allowed to the plaintiff. He then took the verdict into his possession, and instructed the jury to return the following morning when the parties and their attorneys would be present. Apparently this is not the first instance in which such a difficulty has presented itself. In the early English case of *Rex* v. *Simmons*, 1 Wils. 329, the verdict, as recorded, found the defendant guilty of putting into the pockets of another three ducats, with a malicious intent to charge the latter with a felony. Upon a motion for a new trial the judge who tried the case explained that in reply to interrogatories put to the jury by him at the time when he received its verdict the

jurors replied: "We find him guilty of putting the ducats into his pocket without any intent," but that through some mistake a general verdict was entered finding the defendant guilty. The affidavits of all twelve jurors were in harmony with the trial judge's explanation, and added, "that there was a great noise in Court" when the verdict was returned, and that this interfered with the hearing. The motion was allowed. This case is referred to as the first precedent of a new trial for a criminal offense: Wigmore on Evidence (2 ed.), § 2355. Mr. Wigmore cites this case, and many others, in support of the rule that when a unanimous error occurs at the time of the announcement of the verdict, that fact may be shown: Wigmore on Evidence (2 ed.), § 2355. In the case before us no error occurred in the recording of the verdict, but a judgment for less than $16,225.00 would not be in accord with the verdict announced if the latter is aided by the explanation made by the nine jurors.

We have already adverted to the fact that before the verdict was received and the jury was discharged the court made inquiries and received the information, which if now employed removes the ambiguity. It seems to be well established that this information is usable for the purpose of making clear the jury's meaning:

"The reasons for the foregoing rule, namely, the dangers of uncertainty and of tampering with the jurors to procure testimony, disappear in large part if such investigation as may be desired is *made by the judge,* and takes place *before the jurors' discharge* and separation. When therefore the jury brings in its verdict, the judge, in his just and usual control of the proceedings, may *refuse to accept it* as final, and may require the *jury to retire again*

to make the verdict more specific or more clear. This procedure is a traditional part of jury-trial; in principle it is equivalent to holding the first utterance of the foreman as tentative and informal only; and even after an initial discharge, the judge may re-convene them, '*nunc pro tunc*,' for making such correction. It is not that the jury adds explanations to the verdict; there is no verdict as yet; and they retire to restate it and give it a final form: * *

"Accordingly, some Courts, chiefly in New England, concede the propriety of examining the jurors while still in their box, after verdict pronounced, to ascertain the particular issues on which a general verdict is founded or the detailed propositions of fact or of law which entered into the verdict; so that the jurors may be sent back to reformulate their verdict, or that the verdict may then and there be set aside if for the issue upon which it rested there is not in the judge's opinion sufficient evidence, or if they proceeded on a palpable mistake of law. This process of making more precise the details of their finding has the same purpose as the expedient of a special verdict or a special finding on interrogatories, and is related in principle to rule b, *post*. Under the modern practice in the United States, in which the judges tend to degenerate into mere umpires, it is not likely to be often seen. But there is no reason why such a control of the verdict should not be exercised; for it merely assumes to remedy the verdict's aberrations before it has become a recorded finality and before the crucial line has been passed which must somewhere always be recognized in order that there may be an end of controversy. At the same time, this expedient is practically not of frequent utility, because the misapprehensions which it is designed to cure can seldom become the subject of suspicion and investigation by the parties until the jurors after their discharge have by public conversation disclosed the nature of the mistake." Wigmore on Evidence (2 ed.), § 2350.

In *Capen* v. *Inhabitants of Stoughton,* 16 Gray (Mass.), 364, it was held permissible to receive the evidence of three of the jurors that the entire jury, after agreeing upon a verdict for the petitioners and filling up a blank form accordingly, inadvertently signed the form of verdict for the respondents. Chief Justice BIGELOW, in holding this evidence admissible, pointed out that "It has been settled upon sound considerations of public policy that mistake of the testimony, misapprehension of the law, error in computation, irregular or illegal methods of arriving at damages, unsound reasons or improper motions, misconduct during the trial or in the jury room cannot be shown * * " and then returning to the situation before the court, pointed out, "the error consisted, not in making up their verdict on wrong principles, or on a mistake of facts, but in an omission to state correctly in writing the verdict to which they had, by a due and regular course of proceeding, honestly and fairly arrived. * * No considerations of public policy require that the uncontradicted testimony of jurors to establish an error of this nature should be excluded. Its admission does not in any degree infringe on the sanctity with which the law surrounds the deliberations of juries, or expose their verdicts to be set aside through improper influences, or upon grounds which might prove dangerous to the purity and steadiness of the administration of public justice. On the contrary, it is a case of manifest mistake, of a merely formal and clerical character, which the court ought to interfere to correct, in order to prevent the rights of parties from being sacrificed by a blind adherence to a rule of evidence, in itself highly salutary and reasonable, but which upon principle has no application to the

present case.'' To similar effect see 22 Ency. Pl. & Pr. 891.

Hence, it is permissible for us to consider the explanation made by the jury. As to its reliability there can be no question; the court below, which heard the explanation, wrote a judgment in conformity with it, and the explanatory matter is placed before us in the words of counsel for the defendant.

Undoubtedly better practice would have suggested an instruction to the jury to return to its room and prepare a verdict free from ambiguity, so that the document as recorded would become the sole evidence of the jury's decision; but under the circumstances, which placed into the record the jury's explanation of its ambiguous verdict before its discharge, we do not believe that this breach of safe practice demands a departure from what now is made to appear as the clear purpose of the jury.

It follows from the foregoing that the judgment of the lower court is affirmed.                AFFIRMED.

COSHOW, C. J., and RAND and McBRIDE, JJ., concur.